UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| TERRY EUGENE IVERSEN, | ) | |
| | ) | 2: 20-cv-01524-AA |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUSAN WASHBURN, | ) | OPINION AND ORDER |
| | ) | |
| Respondent. | ) | |

Kristina S. Hellman
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

      Attorney for Petitioner

Ellen F. Rosenblum
Attorney General
Nicholas M. Kallstrom
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

      Attorneys for Respondent

1 – OPINION AND ORDER

AIKEN, District Judge.

Petitioner Terry Eugene Iversen, an inmate at the Eastern Oregon Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his sentence for Public Indecency.  For the reasons set forth below, the Court denies the Petition for Writ of Habeas Corpus [2] and dismisses this action with prejudice.

### I.    **Background**

On October 12, 2016, petitioner boarded a MAX train and began watching a 23-year-old woman seated at the front of the train and her friend who was seated behind her.  When the friend exited the train, petitioner immediately moved to take her vacated seat.  The woman in front heard concerning movement and turned to see that petitioner had exposed his penis and was actively masturbating behind her.  This continued for several minutes until petitioner eventually got up and got off the train.  Shortly thereafter, the victim exited the train and immediately called police.  They located petitioner and the victim was able to identify him.

At the time of his plea hearing in the above matter petitioner had numerous prior convictions stretching back more than thirty years:  October 1985: public indecency; August 1986: attempted second-degree escape; March 1989: felony attempt to elude police and reckless driving, third-degree rape (involving a 15-year-old girl), second-degree sodomy (involving a 12-year-old girl) and first-degree burglary; January 1997: public indecency, unlawful use of a weapon, resisting arrest, and reckless driving; July 1999: felon attempt to elude police and possession of methamphetamine (police called to the scene because petitioner had parked his car in front of a Baskin-Robbins and was observed watching two young women close the shop); December 2000: two convictions for felony public indecency (petitioner masturbating on the MAX train in front of

16 and 17-year-old girls);  July 2005: second-degree assault, third-degree assault, felony hit and run, felony attempt to elude police, misdemeanor attempt to elude police (police called to the scene because petitioner was observed following girls, ages 10 and 14, and two other children, with his car near a shopping mall; when police arrived he fled causing a serious auto accident; police found duct tape, methamphetamine and marijuana in his car).

In this case, petitioner pleaded guilty to Public Indecency.  In so doing, he acknowledged that he previously had been sentenced on two felony sex crimes at set forth in ORS 137.719 and admitted to three enhancement factors: (1) that the crime involved persistent involvement in similar offenses unrelated to the current offense; (2) that prior justice system sanctions had failed to deter him from reoffending; and (3) that he was on supervision at the time of the offense.[1]  The court sentenced him to LWOP in 2017.  On direct review, the Oregon Court of Appeals affirmed the sentence *per curiam* and the Oregon Supreme Court ultimately denied review.  *State v. Iverson*, 296 Or. App. 360, 435 P.3d 837 (2019), *rev. denied* 365 Or. 369, 451 P.3d 984 (2019); Respondent's Exhibits 104-108.

Petitioner did not pursue post-conviction relief ("PCR") in state court.  On September 3, 2020, he filed this action.  His sole ground for relief as set forth in the Petition is as follows:

Ground One:  Eighth Amendment – cruel and unusual punishment

Supporting Facts:  I would have received less time if instead of exposing myself I would [have] pulled out a knife and killed the person.  The crime I committed carries a 1-year max jail term for first time offenders.  Mine was a Class C felony which is supposed to carry a 5-year max prison sentence.

---

[1] Under ORS 137.719(1), the presumptive sentence for a felony sex crime is life imprisonment without the possibility of parole ("LWOP") if the defendant has been sentenced for felony sex crimes at least two times prior to the current sentence.

3 – OPINION AND ORDER

Respondent asks the Court to deny relief on the Petition because the trial court did not unreasonably apply clearly established federal law when it imposed the presumptive LWOP sentence in accord with Oregon law.

## II.    Merits

### A.    Standards for Habeas Relief

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that a materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable.  *Id*. at 409-10.  28 U.S.C. § 2254(d) "preserves

authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with the Court's precedents.  It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

When applying these standards, the federal court should review the "last reasoned decision" by a state court that addressed the issue.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision and can only grant habeas relief if the state court's decision was objectively unreasonable.  *Richter*, 562 U.S. at 98; *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

**B.  <u>Analysis</u>**

Petitioner argues that the trial court's decision was objectively unreasonable because in assessing the gravity of his offense, it ignored the de-escalation in the seriousness of his crimes and his amenability to treatment; and it unreasonably relied on uncharged or dismissed conduct in assessing his criminal history.  In addition, citing *Solem*, he argues that given he could only have received a harsher sentence if he were convicted of aggravated murder and sentenced to death, his LWOP sentence was grossly disproportionate to his crime.  *See Solem v. Helm*, 463 U.S. 277 (1983)(Court overturned as grossly disproportionate under the Eighth Amendment a LWOP sentence under recidivism statute for crime of "uttering a 'no account' check for $100" where defendant had six prior felony convictions which the Court characterized as non-violent and not

crimes against a person.).  Respondent maintains that *Solem* is easily distinguishable from the facts

in petitioner's case in that:  (1) petitioner has a history of serious sex crimes against children; (2)

public indecency is a person crime; (3) petitioner had convictions for serious non-sex crimes

stemming from his attempts to flee from police upon reports that he was preying on children; and

(4) petitioner's lack of demonstrated impulse control over the course of his adult life makes him

precisely the type of offender ORS 137.719 is intended to neutralize.

The Eighth Amendment includes a "narrow proportionality principle" in non-capital cases

that prohibits sentences "grossly disproportionate" to the crime.  *Ewing v. California*, 538 U.S. 11,

20, 23 (2003)(quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97, 1001 (1991)).  To succeed on

a proportionality claim, a petitioner must make a threshold showing of gross disproportionality

through a "comparison of the crime committed and the sentence imposed."  *Id*. at 30 (citing

*Harmelin*, 501 U.S. at 1005); *see also Norris v. Morgan*, 622 F.3d 1276, 1287 (9th Cir.

2010)(explaining that "in applying [the] gross disproportionality principle[,] courts must

objectively measure the severity of a defendant's sentence in light of the crimes he committed.").

It is exceptionally difficult for a defendant to show that his sentence is unconstitutionally

disproportionate.  Several Supreme Court cases have upheld sentences that seem harsh in light of

the offenses committed.  *See, e.g., Ewing* (upholding 25-year sentence of habitual criminal

defendant for stealing three golf clubs, holding that states may dictate how they wish to deal with

recidivism issues); *Lockyer v. Andrade*, 538 U.S. 63 (2003)(50-years-to-life sentence for stealing

$150 of videotapes upheld under California's three-strikes law); *Hutto v. Davis*, 454 U.S. 370

(1982)(40-year prison sentence upheld where defendant was convicted of possession with intent

to sell nine ounces of marijuana); *Rummel v. Estelle*, 445 U.S. 263 (1980)(life sentence upheld

where defendant was repeat offender and committed third felony of stealing $120). "A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation." *Ewing*, 538 U.S. at 25. Further, "[r]ecidivism has long been recognized as a legitimate basis for increased punishment." *Id*.

In considering a proportionality challenge to a sentence in a non-capital case, a court must begin with a threshold inquiry "comparing the gravity of the offense and the severity of the sentence." *Graham v. Florida*, 560 U.S. 48, 60 (2010)(citing *Harmelin*, 501 U.S. at 1005). "'In the rare case in which [this] threshold comparison … leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id*. (quoting *Harmelin,* 501 U.S. at 1005).

Here, in addition to outlining the circumstances of petitioner's numerous prior convictions at his plea hearing, the State presented information about relevant uncharged conduct. This included the fact that in 1988 petitioner was the primary suspect in approximately 15 public masturbation incidents at homes situated on a golf course, a rape at one of these homes and a confrontation with a groundskeeper who later identified petitioner as the person who threatened him with a knife. Also, in 1996, although no charges were brought, police investigated a woman's allegations that petitioner followed her home and raped her. And within a couple of months of his most recent release from prison in May 2016, petitioner removed his GPS bracelet and absconded. He was detained for 45 days and within a week of release from that detention surveillance videos captured him masturbating behind a 21-year-old woman on the MAX train. He was not charged in that incident which occurred just over a month before the subject crime.

7 – OPINION AND ORDER

With regard to his amenability to treatment, petitioner's parole and probation officer testified at his plea hearing that he had been referred to treatment to prevent sexual offenses 5-6 times but never successfully completed or even significantly participated in any of these programs. Noting petitioner's persistent previous involvement in sex offenses, several of which involved child victims, the officer recommended that the court impose the presumptive LWOP sentence.

In opting for the presumptive sentence the trial court stated:

And I've looked at everything here. I've heard all the testimony here. I mean it's just – there –I just can't find any – mitigation here on part of the defendant. I mean it's just incarceration, failure, doesn't get treatment, failure, doesn't get treatment, gets released, reoffends, doesn't do treatment, re-offends. It's just that's been your life most of your life and you've been in prison, alright, and in essence this statute is a habitual offender statute. There's a number of these that have different impacts on different sentence issues where of repeat over and over and also incorporates you know, the inability or the ability to reform, and you just haven't sir. You've been given so many opportunities [ ] to reform, and you haven't completed one single probation, one single you know, you're -- you're released out in the community, you re-offend again, and you're off to prison, and what do you do there? Do you address your issues? No. *** Your – your criminal history is horrendous, absolutely horrendous, you know, and in comparison to the case – the Supreme Court cases that – or the case that came out. One was a Court of Appeals case, I'm sorry, that came out. In reviewing the you know, they don't – they do not declare that a sentence for this type of offense, a life sentence is unconstitutional. They were pretty clear on that. You know, in essence what – what you need to look at is your past, the prior record, and is there anything there that shows that there's an ability to reform, that you may not be here, not be revolving back and forth.

***

You know you have been given many, many opportunities, many, many opportunities to reform and you haven't taken advantage of them. You haven't done it, alright, so here's my you know, in considering your criminal history, your inability to – to reform and the risk that you present to the public, which I think is substantial, you know is you know, you're – you're very dangerous, you know, whether it be just another public indecency or something further than that, you know.

Respondent's Exhibit ("Resp. Ex.") 103, at 127-29 [19-1].

The isolated triggering offense here is not severe relative to the sentence, but as petitioner acknowledges, in examining the gravity of the offense in the recidivism context, courts must consider a defendant's criminal history. Moreover, petitioner's reliance on *Solem* notwithstanding, that case actually underscores the reasons he cannot prevail here. In stark contrast to the facts at issue in *Solem*, petitioner committed numerous person crimes, including serious sex offenses against children. There is ample support in the record for the trial court's findings concerning: petitioner's criminal history, including the facts that he was convicted of serious sex offenses against children in the past and more recent convictions for serious non-sex offenses stemming from his attempts to flee from police responding to reports of him appearing to be preying on children; his inability to reform; and the significant danger he poses to the public.[2] Accordingly, assessing the threshold proportionality question, the Court concludes that petitioner cannot establish that his LWOP sentence is grossly disproportionate to the crimes of which he was convicted. Because the Court determines that this is not the rare case where the threshold comparison leads to an inference of gross disproportionality, the Court need not and does not analyze intra-jurisdictional and inter-jurisdictional comparisons.

For these reasons, petitioner cannot demonstrate that the trial court's determination

---

[2] Petitioner contends that the trial court failed to consider the deescalating nature of his crimes. However, during the plea hearing when petitioner's counsel argued that his more serious person crimes all occurred decades ago and his subsequent crimes mainly involved public masturbation, the court noted that he had been in prison most of that time and was not out in the public living a normal life. Resp. Ex. 103, at 158 [19-1]. Moreover, while the court heard testimony about uncharged conduct, it did not reference such conduct in its ruling or otherwise suggest that it was necessary to its decision to impose the presumptive sentence.

that his sentence does not violate the Eighth Amendment was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or that its decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the Court denies relief on this claim.

## CONCLUSION

Based on the foregoing, the Court DENIES the Petition for Writ of Habeas Corpus [2] and DISMISSES this action with prejudice. The Court DENIES a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right.[3]

IT IS SO ORDERED.

DATED this  24th  day of January, 2022.

 /s/Ann Aiken
Ann Aiken
United States District Judge

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

[3] A petitioner seeking relief under §2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a Certificate of Appealability ("COA") from a district or circuit court judge. A Certificate of Appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

10 – OPINION AND ORDER